And at this time, we'll hear United States v. Johnson. Okay, that's the appellant? Okay. The appellant is not here today. He thought it was another day, but you are. So we'll hear from the government. May it please the court, my name is Paul Silver. I do appear on behalf of the government. In the proceedings below, first I would say that the allocution that occurred at the change of plea proceeding was sufficient to advise Mr. Johnson that he faced a mandatory minimum term of imprisonment of life. Government counsel said that twice. Once when asked by the district court to advise the defendant of the mandatory minimum penalty, and once when asked by the district court to discuss the sentencing guidelines that would otherwise be applicable to the case of Thiller. Otherwise? Yes, Your Honor. Were there not a mandatory minimum? What was the... I mean, I'm not sure I understand what the point of... And there was a great extended discussion of the guidelines, but the guidelines had nothing to do with what the sentence was going to be. And I appreciate the court's concern. I think that's a valid... Not that you need my... No, I understand. But 5G 1.1 of the guidelines speaks in terms of the mandatory... Excuse me. Speaks in terms of the guideline sentence becoming the mandatory minimum when the mandatory minimum is greater than the guidelines. So to that extent, the guidelines are relevant in order to become the mandatory... No, I understand that. But the question is whether this defendant received notice from his lawyer, from the court, from the prosecutor who was asked by the court to discuss this as to the fact that he was simply going to be... The only possible sentence was life in prison. There was no statement during the allocution that is that straightforward. And I do believe that that's unfortunate. But everything else was a lot of detail. It's like explaining the plumbing when somebody wants to know which tap is hot and which tap is cold. Your Honor, Rule 11 does require the court to address with the defendant the guidelines. Now, you're absolutely correct. I don't mean to undermine the point that the guideline sentence here is life. But I can't... I don't think it was error to say that here is a guideline calculation followed by the statement by the government counsel that, nonetheless, these guidelines are trumped by the statutory minimum penalty. Now, Mr. Silver, were you counsel in the district court in this matter? No, Your Honor.  Yes, Your Honor. About footnote 11 at page 33 of your brief, in which you almost fall on your sword, but not quite. Is that the discussion of Rodriguez? Yes. I mean, there's no question that this could have been made simpler. And as it was explained to me... I mean, it would have been advisable for someone in your position, and, of course, you were not the person in your position, as it were, to have clarified this to make sure that the record... we wouldn't have this problem now. I agree with you wholeheartedly, Your Honor, and I would add to that. It is unfortunate that once Mr. Johnson indicated that he wished to withdraw his plea, that a simple question wasn't put to defense counsel. What did you tell him? Well, we assume, should we not assume, that defense counsel told his client what defense counsel told the court, that the court has discretion and that... I mean, the sentencing memorandum talked about ranges and discretion, and when at the sentencing, when counsel addressed the court, the court asked for consideration of good works as opposed to wrong deeds. None of this had anything whatsoever to do with the sentence. You see, it's not so much the error or identifying an error here or there. The question is what would Mr. Johnson think going through this process if he's told that, you know, if the plea is accepted, he won't be able to run for public office, for example. Yes. Well, in today's world, Your Honor, before I address that question, I don't want to lose a thought. In today's world. With respect to the sentencing memorandum, Your Honor, with all due respect to my colleague who was defense counsel, that was a stupid argument to make, but in addition... It's a stupid argument to make, granted, but doesn't that plausibly reflect that that is the advice that he gave his client? And if that's the advice he gave his client, then Mr. Johnson would have had no idea that this was a mandatory minimum unless he understood what the term mandatory minimum was after long disquisitions about all sorts of other things at the hearing. Particularly when the string was pulled not by the district judge but by the prosecutors. The district judge, who shoulders the primary Rule 11 responsibility, is telling the defendant, this is how the guidelines operate, this is what they mean in this case, and on and on, including information that was quite irrelevant, and then at the end of the day, it's the prosecutor that says it's trumped by the minimum mandatory. I don't think it's impermissible for the court to rely on a statement by counsel to express the penalties. But these are technical terms. It seems rather obvious to all of us to use the term mandatory minimum. It doesn't necessarily translate or become comprehensible to a defendant in this position, right? Yes. I mean, you have to be assured in these circumstances that the defendant, in the circumstances, given his background or whatever, can actually understand what is going on. Yes. Were any of his prior convictions federal convictions? No, Your Honor, I don't believe so. This is his first time trying to navigate the sentencing guidelines. I mean, we've got lots . . . I hesitate to say it, but we have district judges who used to have problems with them. We're still trying to circumnavigate them. Well, in fairness to the district judge here, and I do want to make one point with respect to the sentencing memo, and I'll come back to that. In fairness to the district judge here, he did have the opportunity . . . I mean, this is tautological maybe would be the right word. I mean, obviously the district court says, I find that the plea was entered knowingly and voluntarily with a full understanding of the consequences of doing so. My point being that, not that that's binding here, but that determination is made with having the defendant in front of the court and having that exchange . . . If this was knowing on Mr. Johnson's part, what was he thinking? I mean, what did he get out of this? Well, his motivation for entering the guilty plea is not relevant from the record. I mean, it's not disclosed by the record, so . . . Well, not only is it not disclosed by the record, it can't be imagined. I would not say that, Your Honor. And I know that . . . Why would he plead guilty in these circumstances? The follow-up on Judge Jacob's question. Well, first of all, he may simply not have wanted to go through a trial where the proof was overwhelming. Secondly, he may have felt that by putting himself in a better position by pleading guilty and accepting responsibility in the climate that we operate in now where the president is exercising discretion and granting people reductions in sentence, where statutory changes are occurring. All of these things may have occurred to the defendant to say, I may be better off by standing up and admitting my guilt in order . . . Are you telling us that it's your belief that when he entered this plea, he understood that Mr. Obama might get elected president and have a clemency program some days down the line? I'm not saying that's his belief because the record does not disclose that. All I'm saying is that there may have been motivations along those lines to put himself in a better light in the court in the event there was some change down . . . What's in it for him? If you're facing . . . Don't you concede that if you're facing a sentence of a mandatory life on the federal level essentially without parole, there's no incentive . . . There's no reason that I can see from the record why anybody would do that. I don't think the record speaks one way or the other why this defendant would want to do that. And I would analogize, if I may, Your Honor, to the case where someone's carrying a large quantity of drugs in his car and the officer says, do you mind if I look in your car? Go right ahead. Why would an individual say to a police officer, go look in my car, knowing that there are drugs in the car? I mean, it happens. People make decisions for . . . Because usually when you're driving your car, you don't have your lawyer sitting next to you. That's one reason. Fair enough. And I'm going to force myself to go back to Your Honor's discussion of the sentencing memo because the memo does in and of itself evince a fundamental understanding of mandatory and minimum sentences. But the colloquy with the court demonstrates that the lawyer knew full well . . . At the sentencing, the lawyer argued for a downward departure. He must have been delusional. He wasn't arguing for a pardon. Besides, at this time, the only pardons that presidents were giving out were for turkeys. What the lawyer said to Judge McAvoy . . . Not turkeys. I mean, turkeys were as rare as hen's teeth at this point. What the lawyer said to Judge McAvoy is, essentially, in some instances, I know that what I'm asking for is not possible, but we see what's happening to the law. I don't want to be back here in five years or ten years resentencing Mr. Johnson. Let's do it now. And Judge McAvoy says, well, that's correct. The law is in a state of flux, but we're bound by the law. Let me go back to something you said earlier. You said maybe Mr. Johnson didn't want to go to trial when the evidence was so overwhelming. But he owned a club. He was not a person who was actually dealing hand-to-hand with the drugs. He was intercepted on the wiretap, Your Honor, discussing the provision of drugs to people who were subordinate to him. So . . . And there are . . . I don't know what they would say. I don't think it's discussed here. But I know there are cooperators in the case who would testify as well. Am I correct that the reason this is a life sentence is because there were two prior convictions, both of them when he was a teenager? I don't know if they both occurred when he was a teenager. I know the defendant said at least one of them was, but I apologize. I don't know. And if he had been sentenced on the basis of a single felony information, it would have meant a mandatory 20 years. Yes, Your Honor. And he's not elderly, so it would have made a substantial difference. Yes. Yeah, and he has an interesting soliloquy at his sentencing, going back to your concern that he had something to fear about going to trial. It strikes me that a person who articulates the particular range of arguments that he makes,  charging me for, I should have been a millionaire. I have no money. Check my bank account. Zero. I don't own anything. They raided my house. Not a dollar. Not a scale. Nothing. Anything to do with drugs. Where can I hide all this money? These are millions of dollars they're talking about. Now, I'm not giving any credence to this statement, but simply pointing out that he's got a story. I mean, he's got a story of some kind which might be sympathetic to some jurors, and all he needs is one, after all, to at least get through the first trial, as it were. So, I mean, I don't understand. I mean, he had something to gain by going to trial. Am I wrong? Absolutely not. I mean, I don't know what he looks like or what he's like in fact, but just reading his extended meditation, it's kind of interesting. Or it could be made interesting by a lawyer. Let me ask you, is Mr. Gerzog, he was not in the trial court. No, Your Honor. Is he appointed under the CJA? Mr. Gerzog on appeal? Yeah. I honestly don't know. I assume so. I'm sorry, I don't know. Well, let me ask you, assume for the argument only that we remand for each other, which seems to me to be the easiest solution in many of these sentencing cases where there's the slightest doubt it's not worth your trouble, not worth mine or anybody else's. When you have some doubts, you send it back to the district court to review the full record again. If we did that, does it make sense to send it to Judge McAvoy? I don't see any reason not to, Your Honor. I'm not suggesting there's anything wrong with Judge McAvoy's behavior. It's just that these are the kinds of situations which are difficult for a district judge to handle on remand because, of course, the threshold reaction is that they're being somehow put upon. And wouldn't it be better for somebody looking at this anew and just coming at it fresh with a new lawyer, maybe not Mr. Gerzog, who doesn't handle his calendar issues very well? I cannot. Won't that make your job easier? Well, I actually . . . I will tell you, in answer to Judge Cabranes, I would say I can't think of a . . . There is no part of me that thinks that Judge McAvoy could not fairly determine this case on remand. In answer to your question, Your Honor, I think it makes sense for a record to be developed as to what defense counsel told his client. And in all candor with the court, we had some very spirited discussion in my office about whether to proceed with what I'll characterize as a legal argument as opposed to the practical remedy of, let's just have a hearing on this issue and find out what was discussed. And in all candor, I would say to the court, why should we or anybody assume that Mr. Johnson's lawyer told him something other than what Mr. Johnson's lawyer evinced as his understanding of the situation at the plea and in the memo and in the argument for the downward departure at the sentencing? I do think you have to read the sentencing memo in context of Mr. Kinlan, who was the . . . Why would you submit a sentencing memo? I mean, what is there to say in the sentencing memo? If your client knowingly agrees to a judgment that will contain a mandatory life sentence. I agree with Your Honor wholeheartedly. It's not an essay. It's not a college admission essay. It's a sentencing memorandum. It would say there's nothing to be said. My client is going to jail for life. I agree with you 100 percent. And I don't think it was a wise thing for counsel to do, given the penalty. It would be a wise thing for him to do if he misunderstood what the penalty was. Or . . . Then it would be a necessary thing for him to do. And that is evidence that he didn't understand what he was getting his client into. There is no question that the memo itself suggests he had a fundamental misunderstanding of the law. And I ask you please to look at his comment, Mr. Kinlan's comments, counsel's comments, to Judge McAvoy. What he essentially is saying to the judge, look, we all know the drug laws are changing. In effect, he's asking the judge, disregard the law. I think that's a fair interpretation. And I don't think that's a smart thing to do. He said we are watching the sands shift before our eyes in terms of the sentencing guidelines. But the sentencing guidelines are trumped by the mandatory minimum. So whatever the sentencing guidelines may do or say in the future, Mr. Johnson is spending the rest of his days in jail. So what he said to the court evinces a further misunderstanding. He's working toward a result that only makes sense if he has and continued to have the fundamental misunderstanding of the law that you posited. I don't read it that way, Your Honor. But I can't say that you're unjustified in doing so, obviously. It says, look, I ask the court to be prospective in how it sentences Mr. Johnson. Sentences his present tense, now. Look at all the things he's done and balance them against the things he pled guilty to and sentence him accordingly. What does that mean to you? It means to me, I place greater significance than Your Honor, I think, on the term prospective. I think what Mr. Kinlan was saying is, let's not come back in ten years when these changes occur that we all anticipate. So just do it now, Judge. Do what now? Sentence below the mandatory minimum. And how can he sentence below a mandatory minimum? He can't. He can't. But I don't think Mr. Kinlan was operating under the misapprehension that the judge could if Judge McAvoy followed the law. But that's not the point. Doesn't the material that Judge Jacobs read to you raise a strong possibility that this is what he told his client? Yes. At least this is what his client believed. And he couldn't have believed it other than the only source of this information would have been his lawyer. And again, with all candor, what I hope the court will do is, in some context, I mean, obviously, I can . . . I'm comfortable saying that the court is not going to leave this for a 2255 proceeding. So this is going back to the district court for whatever relief this court deems appropriate. And I think there should be fact-finding as to what counsel told his client. You're confessing error. I'm saying that I would not . . . I do not oppose such a remand. And with all due candor, Your Honor, what I'm trying to avoid is for this court to say, apart from whether Judge McAvoy abused his discretion in setting aside the plea, the allocution itself is insufficient. I would like . . . I'm trying to preserve the guilty plea if subsequent fact-finding demonstrates that Mr. Johnson was appropriately advised. Mr. Silver, it's always a pleasure to see you. Do not get me wrong. But as a kind of administrative pastoral counseling, Mr. Lovric, your colleague, who was the AUSA in the court, is he still with your office? Yes, Your Honor. Now, why would he not come down here and give us the benefit of information about what happened in court, which understandably you're not in a position to give us? So with perfect good faith, you've, on several occasions during the course of this morning's argument, you've indicated you might not know exactly what happened or who intended what. Presumably Mr. Lovric would have a better understanding and could fall on his own sword rather than send Paul Silver down here to fall on his sword. Mr. Lovric would be adamant with you that Mr. Johnson understood . . . Yeah, no, that's fine. It would be nice to have him here and he would have the benefit of pastoral counseling from the bench. And he could help us to . . . Yeah, it might be more helpful to us. Not that you haven't been extremely helpful. Exactly. So when you go back and you think about this case in the large for future reference, maybe you can consider this question of whether it isn't advisable for the AUSA in a particular case to actually come with you at limited expense per diem only for one day. The problem, I think, Your Honor, is that in order to answer the court's concerns, we would be going outside the record a lot. And if the court felt that that was appropriate . . . Depending on what you were going to say. Well, I mean, maybe not beneficial, but appropriate. There is an area that I . . . and I apologize for the amount of time I'm taking here . . . that I strongly wanted to stay away from. And I probably should still stay away from. But, apropos to Your Honor's concerns, what I've characterized what the government has done here is a legal argument. There remains the factual question. What actually happened? After . . . well, just prior to the government filing its brief in this case, there were proceedings in the district court. Ex parte, application by the government. We want to go speak to Mr. Kinlan, and we want to ask him, What did you tell your client? Because we don't want to go file this brief. If what actually happened is you gave him wrong advice. Judge McAvoy signed an order allowing us to speak to Mr. Kinlan. We obtained an affidavit from Mr. Kinlan. Subsequently, Mr. Gerzak . . . Mr. Johnson wrote to the court and said, Why did you do that without asking me? And Mr. Gerzak represented to the court that it was inappropriate to allow us to talk to Mr. Kinlan. We issued an order allowing us to talk to Mr. Kinlan. And Judge McAvoy rescinded his order allowing us to talk to Mr. Kinlan, notwithstanding that we already had an affidavit, which I did not want to mention to the court because it's obviously not part of the record. So what I'm trying to say to Your Honors is there is a lot of . . . All of this suggests the advisability of sending it to another district judge, not because we lack any confidence at all in Judge McAvoy, who is a veteran and respected judge of the Northern District, and we would never intimate any such view, but it may be advisable simply to begin with a new slate and give this defendant the full Rule 11 hearing to which he was entitled and still is entitled. If Your Honor . . . And you could be there to give such guidance as you think appropriate to whoever handles this before another district judge. Although I recognize that in the Northern District there are sensitivities on these matters, perhaps more than other districts. I can't speak to that. I mean, if Your Honors determine that the allocution should be set aside, then again with your qualifications about speaking about Judge McAvoy, I can't argue that a fresh slate would be inappropriate. What I'm hoping the Court will do is say, rather than set aside the allocution, let's have a hearing either before Judge McAvoy or some other judge as to what counsel actually told his client. Because if counsel told his client, you're going to jail for life, then all of this other information in the record that could be construed in the absence of knowing that fact, that Mr. Johnson didn't understand that. And I lost my train of thought. What happened has to be viewed through the specter of what Mr. Johnson actually was told, and I'm hoping that the Court will allow that to occur. Suppose Mr. Johnson was told accurate advice, and he sat and he listened to the judge and the prosecutor talking about the sentencing guidelines and all of these other options and discretion and you won't be able to have a gun in the future and you won't be able to run for public office and all the rest of it. Couldn't he have come to the conclusion that maybe he misunderstood his lawyer and that in fact he was going to have the benefit of a considered sentence rather than a mandatory sentence? That is possible, Your Honor. But again, all of the advice that counsel gave his client and whatever discussions were had may bear on whether Mr. Johnson in fact reached that conclusion. Thank you. Thank you very much. Thank you so much for your time, Your Honor. We'll reserve decision. Newpage v. Sag Harbor is taken on submission. United States v. Forbes is taken on submission. That's the last case on calendar. Please adjourn the Court. Court is adjourned.